UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PATRICK QUATRONE,

    Plaintiff,

        v.                                    No. 3:15-cv-848(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____X

**RULING ON PENDING MOTIONS**

Plaintiff Patrick Quatrone has filed this appeal of the adverse decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 14]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 15]. The undersigned heard oral argument on February 15, 2017.[1] For the reasons that follow, the Commissioner's decision is affirmed.

**Legal Standard**

The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

---

[1] The Court thanks counsel for presenting well-reasoned, thoughtful oral arguments.

1

**Background**

Plaintiff filed his DIB application on February 21, 2012, alleging a disability onset date of December 21, 2011.[2] His claims were denied at both the initial and reconsideration levels. Thereafter, Plaintiff appeared and testified at a hearing before administrative law judge Lisa Groeneveld-Meijer ("the ALJ") on August 20, 2013. On October 23, 2013, the ALJ issued a decision denying Plaintiff's claims. The Appeals Council denied review of the ALJ's decision, making it the final decision of the Commissioner. This action followed.

Plaintiff was fifty years old on the alleged onset date. (R. 31). He has prior work experience as a collections manager, and he last worked in this position in 2009. (R. 54). In accordance with the Court's scheduling order, the parties stipulated to Plaintiff's medical background as presented in the briefs accompanying Plaintiff's motion. The Court adopts these facts and incorporates them by reference herein.

**The ALJ's Decision**

The ALJ followed the sequential evaluation process for assessing disability claims. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 33). At Step Two, the ALJ found the following severe impairments: dysthymia with anxiety; back and neck pain due to bilateral spondylolysis and spondylolisthesis at L5 and spina bifida occulta in the sacrum; and diverticulosis. (R. 34). At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or

---

[2] Plaintiff originally alleged an onset date of June 11, 2009, but amended the alleged onset date to December 21, 2011 at the hearing. (R. 31, 48).

medically equals the severity of one of the listed impairments. (R. 34-35). Next, the ALJ determined Plaintiff retained the following residual functional capacity:[3]

> Plaintiff can perform light work except he should not climb ladders, ropes, scaffolds, or stairs. He can frequently climb ramps, and can frequently perform other postural activities, such as kneeling, bending, stooping, crawling, and balancing. He should avoid potential hazards, such as moving mechanical parts and unprotected heights. He should not be exposed to concentrated loud noises. He can perform routine work with few changes day to day, no contact with the general public, no tandem tasks, and only brief and superficial interaction with others on shift. He should not perform belt-paced work. He requires the option to change positions two to three times per hour to stretch at the work station.

(R. 35-39). At Step Four, the ALJ found Plaintiff was unable to perform his past relevant work (R. 31). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert ("VE") to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform given his age, education level, and RFC.[4] (R. 39-40). Accordingly, the ALJ found Plaintiff not to be disabled.

## Discussion

Plaintiff raises several issues on appeal, most of which pertain to the ALJ's evaluation of the opinion of Dr. Gervasi, Plaintiff's primary care physician.

### 1. The Treating Physician Rule

Plaintiff first argues that the ALJ erred in weighing the opinion of Dr. Gervasi. Dr. Gervasi completed two medical source statements on May 11, 2012. The ALJ gave the opinion limited weight because the statements were inconsistent, were not supported by Dr. Gervasi's treatment notes, and were not supported by the record at large. (R. 38).

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his limitations. 20 C.F.R. § 404.1545(a)(1).
[4] The VE testified that a person with the assessed RFC could perform the jobs of cleaner, mail clerk, and presser. (R. 40).

3

In making an RFC finding, the ALJ must analyze medical opinions. The treating physician rule provides that a treating source's opinion on the nature or severity of a claimant's impairments will be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not deemed controlling, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Those factors include "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 404.1527 (c)(2). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight given. *Burgess,* 537 F.3d at 129. An ALJ is not required to "slavish[ly] recite[]each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue,* 512 F. App'x 67, 70 (2d Cir. 2013).

The ALJ is correct that the two statements completed by Dr. Gervasi are inconsistent. For example, in one statement Dr. Gervasi says Plaintiff could occasionally carry ten pounds and rarely carry twenty pounds. (R. 320). In the other statement, he finds Plaintiff can occasionally carry both ten and twenty pounds. (R. 325). Further, one statement states Plaintiff can frequently stoop, and the other states Plaintiff could stoop only occasionally. (R. 320, 326). Likewise, in one statement Dr. Gervasi notes Plaintiff could frequently climb stairs and rarely climb ladders, while the other states he could not climb at all. (R. 320, 326). Finally, one

4

statement indicates Plaintiff could sit for five hours, and the other states he could sit only for about four. (R. 320, 326). While part of the difficulty is that the forms ask for the same information in different ways, there are enough inconsistencies despite this that the ALJ was entitled to discount the opinion based on inconsistency.

      Dr. Gervasi's opinion is also not supported by his own treatment notes. For example, treatment records from November 14, 2012 indicate that Plaintiff had only one seizure since September due to his treatment with anti-seizure medication. (R. 425). These records also indicate a normal electroencephalogram ("EEG") from September 19, 2012. (*Id.*). Further, Dr. Gervasi's medical source statements themselves would not support a finding of total disability. For example, Dr. Gervasi notes that Plaintiff has no pain. (R. 319). He describes the prognosis as fair to good. (R. 322). He opines in both statements that Plaintiff would be capable of low stress jobs. (R. 321, 323). He also indicates that Plaintiff had limited physical activity, but could do a desk job. (R. 325). Dr. Gervasi notes a normal brain magnetic resonance imaging ("MRI") and EEG. (R. 319). He finally indicates that the anti-seizure medication Plaintiff began in January 2012 decreased the episodes of seizures. (R. 322). A review of the record as a whole supports the ALJ's decision not to give Dr. Gervasi's opinion controlling weight.

      In addition, other opinion evidence supports the assessed RFC. For example, Dr. Cohen, who conducted a psychiatric consultative exam, concluded Plaintiff's prognosis was "guarded." (R. 331). He found "limitations and improvement in [Plaintiff's] mood given he is already in treatment for both neurological conditions as well as anxiety and depression." (*Id.*). Dr. Cohen found Plaintiff to be "functioning, but stable at this time." (*Id.*). The state agency medical consultants, who reviewed Plaintiff's records, concluded he would be capable of unskilled, simple work. (R. 93, 107, 117). In all, substantial evidence supports the RFC finding.

Plaintiff also argues that the ALJ did not sufficiently articulate the precise amount of weight she gave to Dr. Gervasi's opinion.  This argument, while well-made, must be rejected.  When the factors listed in 20 C.F.R. § 404.1527 (c)(2) are analyzed in weighing a treating source opinion, as the ALJ did here, it is likely that ALJ articulated, with sufficient precision, the amount of weight given.  *See Hidalgo v. Colvin*, No. 12CV9009-LTS-SN, 2014 WL 2884018, at *15 (S.D.N.Y. June 25, 2014) ("To determine its precise value, the regulations instruct the ALJ to evaluate [ the 20 C.F.R. § 404.1527 (c)(2)] factors.").  In addition, the ALJ did give the opinion "limited weight" as opposed to not articulating any weight at all.  While "limited" begs the questions how limited, and limited in what way, the decision as whole makes clear that the ALJ gave the opinion little weight; in other words, it is clear that the ALJ considered Dr. Gervasi's opinion, did not finding it entitled to controlling weight, and adequately explained why not.  This is enough.  Courts have found error when an ALJ does not assign *any* weight to a treating source's opinion.  *See Randolph v. Colvin*, No. 12-CV-8539 LTS JLC, 2014 WL 2938184, at *12 (S.D.N.Y. June 30, 2014) (finding legal error when the ALJ did not identify the precise weight given to a treating source opinion when "the ALJ d[id] not specify whether he afforded some, little, or no weight whatsoever.").  This is not the case here.

### *2. Factual Errors and Mischaracterizations*

Plaintiff next argues that the ALJ made several factual errors in her evaluation of the evidence.  The Court has examined the alleged mischaracterizations and rejects Plaintiff's argument; the ALJ accurately and thoroughly described the evidence before her.

In addition, Plaintiff has failed to show how any factual errors allegedly made by the ALJ prejudiced him.  *See Schneider v. Colvin*, No. 3:13-CV-00790 MPS, 2014 WL 4269083, at *8 (D. Conn. Aug. 29, 2014) (a plaintiff must identify how he was prejudiced by any

mischaracterization by the ALJ). Without a showing of prejudice, Plaintiff cannot prevail on this point.

### 3. *Evaluation of Plaintiff's Pain*

Third, Plaintiff argues that the ALJ made no specific findings as to the location, duration, frequency, and intensity of his pain or other symptoms. When determining a claimant's RFC, the ALJ is required to take into account the claimant's reports of pain and other limitations; the ALJ is not, however, required to accept the claimant's subjective complaints without question. *Taylor v. Astrue,* No. 3:09-cv-1049, 2010 WL 7865031, at *9 (D. Conn. Aug. 31, 2010). Instead, the ALJ must weigh the credibility of the claimant's complaints in light of the other evidence of record. The regulations set forth a two-step process for this evaluation. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529. Next, the ALJ must determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. *Id.*

In this case, the ALJ properly evaluated Plaintiff's complaints. She made specific findings as to Plaintiff's credibility. (R. 39). She assessed the credibility of Plaintiff's subjective complaints and weighed them against the medical record. Specifically, the ALJ found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was not credible to extent the symptoms were not supported by the medical evidence. (*Id.*). In making this credibility finding, the ALJ reviewed Plaintiff's reports of his symptoms, and reviewed the medical evidence that belied these reports. (*Id.*). In addition, "[a]ny error the ALJ may have made in failing to mention the specific types of pain that plaintiff claimed to suffer from, however, is harmless in light of the evidence in support of the ALJ's ultimate

determination." *Arvelo v. Colvin*, No. 3:13-cv-0592 CSH, 2015 WL 403224, at *23 (D. Conn. Jan. 28, 2015).

Furthermore, it is the function of the Commissioner, and not the reviewing court, to appraise the claimant's credibility. *See Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (citing *Lennon v. Waterfront Transport,* 20 F.3d 658, 661 (5th Cir.1994)). There is no such unreasonableness here.

### 4. The RFC

Plaintiff also maintains that the RFC is not supported by substantial evidence. Specifically, he avers that the RFC should have included limitations for absenteeism, for time off-task, and for his inability to handle stress. The Court finds that the RFC accurately accounts for Plaintiff's limitations. The ALJ assessed nonexertional limitations in the RFC to account for Plaintiff's mental impairments, and also limited him to light work to account for his physical impairments. (R. 38). As discussed more fully above, the RFC is supported by substantial evidence. A reasonable fact finder could have weighed the evidence as the ALJ did here. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

## Conclusion

After a thorough review of the record and consideration of all of the argument Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that her opinion is supported by substantial evidence. Accordingly, the Commissioner's motion to affirm [Doc. #

8

15] is GRANTED and Plaintiff's motion to reverse [Doc. # 14] is DENIED.  The Clerk is directed to close this case.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED, this  21st  day of February, 2017, at Bridgeport, Connecticut.

*/s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge